UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                                         :
JOHN PRENDERGAST,                                        :
                                                         :
                              Petitioner,                :       **MEMORANDUM
                                                         :       DECISION AND ORDER**
        - against -                                      :
                                                         :       06 Civ. 5314 (BMC)
                                                         :
ISRAEL RIVERA, Superintendent, Coxsackie                 :
Correctional Facility,                                   :
                                                         :
                              Respondent.                :
                                                         :
-------------------------------------------------------- X

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ OCT 13 2011 ★
BROOKLYN OFFICE

**COGAN**, District Judge.

Petitioner *pro se* seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in connection with his conviction for armed robbery. Petitioner brings three separate claims, alleging various violations of the Fifth and Sixth Amendments to the United States Constitution. Because all of petitioner's claims are either procedurally barred or meritless, I deny the petition for habeas corpus.

## BACKGROUND

After a jury trial in Queens County, petitioner was convicted of having robbed a livery car driver by encircling her neck with a cable and demanding her money. On January 6, 2003, he was sentenced, as a second-time violent felony offender under New York law, to concurrent terms of incarceration for Robbery in the First Degree and Criminal Possession of a Weapon. Petitioner's commission of a violent felony subjected him to a law, passed by New York's legislature in 1998, known as "Jenna's Law." This law was named for Jenna Griebshaber, a 22 year-old nursing student murdered by a man who had been released from prison after serving

two-thirds of his indeterminate sentence. See Barry Kamins, *New Criminal Law and Procedure Legislation*, 81 N.Y. ST. B.J. 28, 28 (2009). Jenna's Law requires that violent felons receive determinate sentences of incarceration followed by a mandatory period of post-release supervision ("PRS"). See N.Y. Pen. L. §§ 70.00(6), 70.45. The mandatory period of PRS for all second-time violent felony offenders is five years. Id.

Although petitioner's fifteen-year determinate sentence was announced in open court, the sentencing judge did not announce that his sentence carried a mandatory five-year term of PRS. Nor did the PRS term appear on the commitment order – a clerk-prepared document that reflects a defendant's commitment to the custody of New York's Department of Correctional Services ("DOCS"). However, DOCS subsequently purported to administratively add this period of PRS to petitioner's sentence. Petitioner's situation was not unique: in the years following the enactment of Jenna's Law, thousands of criminal defendants received an administratively-imposed period of PRS after their sentencing judges did not pronounce this aspect of the sentence. See Kamins, supra, at 28. According to petitioner, he did not learn of this five-year PRS term until he requested his "Time Computation Sheet" from DOCS while working on his criminal appeal.

On direct appeal to the Second Department, petitioner argued that he was deprived of due process of law when the prosecutor asked petitioner's alibi witness, over defense counsel's objection, why she had failed to exculpate petitioner at a grand jury hearing or a pre-trial suppression hearing. Petitioner further asserted that the trial court had failed to offer a curative instruction to the jury regarding this testimony. The Second Department affirmed the trial court, finding that petitioner abandoned this claim at trial when he failed to pursue his motion for a

2

mistrial. People v. Prendergast, 27 A.D.3d 487, 487, 810 N.Y.S.2d 335 (2d Dep't 2006). The Court of Appeals denied leave to appeal. 6 N.Y.3d 851, 816 N.Y.S.2d 757 (2006).

In September, 2006, petitioner asserted this same claim in the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254(d). After respondent filed opposition papers and petitioner replied, but before this Court issued a decision, petitioner requested a stay of the habeas proceeding while he exhausted additional claims in state court. Along with this request, petitioner provided the Court with a copy of his petition, under Article 78 of New York's Civil Practice Law and Rules, asking the Albany County Supreme Court to direct the DOCS to remove the five-year term of PRS from his sentence on the ground that the failure to pronounce the mandatory PRS term in open court had deprived petitioner of due process of law. This Court granted petitioner's request for a stay.

Two months after this Court granted the stay, petitioner moved for a writ of error *coram nobis* in the Second Department, raising a new ground for relief: that his appellate counsel was ineffective for failing to argue that it was improper for juror challenges to have been exercised while petitioner was absent from the court room. According to petitioner, although he was present in the court room for voir dire of the jury, the juror challenges occurred in the jury room while petitioner remained in the court room. The Second Department denied the *coram nobis* application, ruling simply that petitioner had "failed to establish that he was denied effective assistance of counsel," and the Court of Appeals denied leave to appeal.

The Albany County Supreme Court denied petitioner's Article 78 petition because, under then-existing state law, the DOCS's administrative application of PRS term was not improper. Petitioner appealed this decision to the Third Department. While his appeal was pending, the District Attorney partially conceded petitioner's point: The District Attorney requested that the

Queens County Supreme Court resentence petitioner in order to orally pronounce the mandatory PRS term. On April 28, 2008, petitioner was resentenced by the Queens County Supreme Court and the judge announced petitioner's five-year PRS term in open court. The next day, the New York Court of Appeals issued two opinions, in companion cases, addressing the widespread failure of sentencing courts to announce mandatory PRS terms in open court.

These companion cases were Garner v. New York State Department of Correctional Services, 10 N.Y.3d 358, 362, 859 N.Y.S.2d 590 (2008), and People v. Sparber, 10 N.Y.3d 457, 859 N.Y.S.2d 582 (2008). In Garner, the Court of Appeals held that DOCS has no statutory authority to add the PRS term onto a sentence, as only a sentencing judge is authorized by New York's Criminal Procedure Law to pronounce this component of a sentence. In Sparber, the Court held that the remedy for a judge's failure to announce the PRS term is a resentencing hearing at which the proper pronouncements should be made by the sentencing judge. In response to these opinions, New York's legislature enacted a statutory framework by which to determine whether, and how, an improperly-sentenced defendant should be resentenced to correct the initial sentencing court's omission. See N.Y. Corr. L. § 601-d; N.Y. Pen. L. § 70.85.

Petitioner appealed his resentencing to the Second Department, arguing that it violated the Double Jeopardy and Due Process clauses of the United States Constitution. Petitioner further argued that his resentencing judge was required to exercise his discretion to consider whether the entire sentence, including the term of PRS, was appropriate. The Second Department found that the New York Supreme Court possessed inherent power to correct petitioner's initial, illegal sentence by resentencing him in accordance with the law. The court found that this resentencing did not violate the Due Process or Double Jeopardy clauses, and that the sentencing court was not required to reconsider the sentence as a whole, as the court was

"presumed to have been aware that the sentence would include a period of PRS." People v. Prendergast, 71 A.D.3d 1055, 1056, 896 N.Y.S.2d 857 (2d Dep't 2010).

Petitioner appealed this decision to the New York Court of Appeals, again arguing that the re-sentencing violated the Due Process and Double Jeopardy clauses. In People v. Lingle, 16 N.Y.3d 621, 926 N.Y.S.2d 4 (2011), the New York Court of Appeals affirmed the Second Department in a consolidated opinion in which the Court settled this issue for petitioner and five other similarly-situated defendants bringing the same claims. The Court held that these defendants' resentencings did not violate the Double Jeopardy clause because the defendants could not claim a "legitimate expectation that the originally-imposed, improper sentence [was] final for all purposes." Lingle, 16 N.Y.3d at 630 (internal quotation marks omitted). The Court also disposed of the defendants' due process claims, finding that the resentencing did not "shock the conscience" because the defendants likely knew all along that they were subject to a term of PRS.

After the Court of Appeals rejected petitioner's resentencing claims, this Court lifted the stay on his federal habeas case and petitioner amended his initial petition. Together with his 2006 petition, the instant petition brings the following claims: 1.) the prosecutor's impeachment of petitioner's alibi witness and the trial court's failure to issue a curative jury instruction deprived petitioner of a fair trial and due process of law; 2.) appellate counsel's failure to raise the argument regarding juror challenges amounted to ineffective assistance of counsel; and 3.) petitioner's resentencing violated the Due Process and Double Jeopardy clauses of the Constitution.

5

## DISCUSSION

### A. The Prosecutor's Impeachment of Petitioner's Alibi Witness

Petitioner argues that the prosecutor's cross-examination of his alibi witness – in which the alibi witness was asked why she failed to present her exculpatory testimony before the grand jury or at a prior evidentiary hearing – undermined his right to remain silent and deprived him of a fair trial. Petitioner further argues that the judge should have given a curative instruction to the jury to explain that petitioner's alibi did not have the opportunity to present this exculpatory evidence earlier. Defense counsel objected to this cross-examination at trial and orally moved for a mistrial, but the trial court held his motion in abeyance. Defense counsel failed to renew his request for a mistrial, and the trial court never ruled on this issue.

This claim is procedurally barred from federal habeas review because the state courts rejected it upon "independent and adequate" state procedural grounds. See Coleman v. Thompson, 501 U.S. 722, 729-33, 111 S.Ct. 2546 (1991). To be independent, a "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case," by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 261-62 & 263, 109 S.Ct. 1038 (1989) (internal quotation marks omitted). A procedural rule is adequate if it is "firmly established and regularly followed by the state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (internal quotation marks omitted). "[P]rinciples of comity . . . counsel that a federal court that deems a state procedural rule inadequate should not reach that conclusion lightly or without clear support in state law." Id. at 77 (internal quotation marks omitted).

In the state courts' last reasoned opinion addressing this claim, the Second Department found that petitioner "abandoned this argument" and declined to reach the issue in the exercise of

6

its "interest of justice jurisdiction." Prendergast, 27 A.D.3d at 487. Abandonment is an independent and adequate state procedural ground which ordinarily bars federal habeas review. See Love v. Garvin, No. 97-4909, 2004 WL 1810342, at *3 (E.D.N.Y. Aug. 9, 2004). The abandonment principle satisfies the requirement of independence because the Second Department relied upon this principle solely to dispose of petitioner's appeal, without regard to the merits of his claim. Although the court did not fully explain its rationale behind this procedural bar, it cited precedent from the Court of Appeals which stands for the principle that a claim is "abandoned" when trial counsel objects to something during trial, causing the court to reserve judgment on the issue, but fails to make a follow-up motion or otherwise pursue relief from the trial court. See People v. Graves, 85 N.Y.2d 1024, 1027, 630 N.Y.S.2d 972 (1995). New York courts regularly apply the abandonment principle as a procedural bar. See id.; People v. Mower, 97 N.Y.2d 239, 246, 739 N.Y.S.2d 343 (2002); People v. Valentine, 271 A.D.2d 245, 706 N.Y.S.2d 331 (2000). The procedural bar was therefore "adequate" to bar federal habeas review.

Because the Second Department rejected this claim upon an independent and adequate procedural ground, federal habeas review is barred unless petitioner shows "cause" for the procedural default and "prejudice" if this Court does not review his claim, or, alternatively, that the failure to review his claim would amount to a "fundamental miscarriage of justice." Murray v. Carrier, 477 U.S. 478, 485 & 495, 106 S.Ct. 2639 (1986). A petitioner may not rely on the "fundamental miscarriage of justice" doctrine, however, unless he demonstrates that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Id. at 496. Petitioner does not claim actual innocence, and therefore may pursue this claim only by meeting the cause-and-prejudice standard.

7

Petitioner argues that he has demonstrated "cause" for his procedural default by showing that his trial counsel was ineffective for failing to move for a mistrial on this point. Petitioner notes correctly that, in certain circumstances, defense counsel's ineffectiveness in failing properly to preserve a claim for state court review can qualify as "cause" for the procedural default. See Edwards v. Carpenter, 529 U.S. 446, 451, 120 S.Ct. 1587 (2000). However, for counsel's ineffectiveness to constitute "cause," the ineffectiveness must itself rise to the level of a Sixth Amendment violation and this constitutional claim must have been raised in the state courts as an independent claim. See id. It is undisputed that petitioner did not raise his ineffectiveness claim in the state court, and his attorney's alleged ineffectiveness is therefore unavailable to establish "cause" for the procedural default.

Petitioner has provided no other explanation for his procedural default, and I see nothing on the record that could constitute "cause." Furthermore, a demonstration of "prejudice" would require petitioner to show that the error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Torres v. Senkowski, 316 F.3d 147, 152 (2d Cir. 2003) (internal quotation marks omitted). A review of the trial transcript, however, demonstrates that the prosecutor's line of questioning was unlikely to have influenced the jury in any significant way. Petitioner faced extensive trial evidence tying him to the robbery; even if this brief impeachment undermined the jury's confidence in petitioner's alibi witness, it seems unavoidable that the jury would still have found petitioner guilty. Petitioner has failed to demonstrate cause-and-prejudice or a fundamental miscarriage of justice, and is therefore procedurally barred from federal habeas review of this claim.

## B. Ineffectiveness of Petitioner's Appellate Counsel

Petitioner argues that his appellate counsel was ineffective for failing to argue, on appeal, that petitioner was subjected to an unfair trial because juror challenges were exercised in his absence. As the state courts ruled on the merits of this claim, the scope of my review is limited. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only after concluding that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Determination of factual issues made by a state court "shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Id. § 2254(e)(1). The fact that the state court did not fully articulate all possible grounds for rejecting the claim on the merits does not deprive its decision of this deferential standard of review. See Jimenez v. Walker, 458 F.3d 130, 143 (2d Cir. 2006).

A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if the state court "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's result]." Williams v. Taylor, 529 U.S. 362, 405, 120 S.Ct. 1495 (2000). A decision is "an unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state

9

prisoner's case." Id. at 407. For relief to be warranted, the "state court's application of governing federal law . . . must be shown to be not only erroneous, but objectively unreasonable." Waddington v. Sarausad, 555 U.S. 179, 190, 129 S.Ct. 823 (2009) (internal quotation marks omitted).

To prevail on a claim of ineffective assistance of counsel under the Sixth Amendment, a petitioner must satisfy the two-part inquiry set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984). First, he must first show that his "counsel's representation fell below an objective standard of reasonableness," Strickland, 466 U.S. at 688, and that counsel made errors serious enough to violate defendant's guarantee of counsel via the Sixth Amendment. See Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366 (1985). Second, petitioner "must show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. This means that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

My review of this claim, under AEDPA, is limited to whether the state court's decision was contrary to, or an unreasonable application of, Strickland. When the state courts have "summarily rejected" an ineffective assistance of counsel claim on the merits, as was the case here, a district court considering that claim under AEDPA should "turn directly to the facts of the case to determine whether Strickland was applied unreasonably." Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004). In this situation, a district court's inquiry "must focus on the ultimate decisions of those courts, rather than on the courts' reasoning." Davis v. Greiner, 428 F.3d 81, 88 (2d Cir. 2005) (internal quotation marks omitted). To find that the state court's ultimate decision was objectively unreasonable, a court "must find that there was some increment of incorrectness beyond error." Id. (internal quotation marks omitted).

10

The state courts' denial of this claim was an objectively reasonable application of Strickland. In an affirmation submitted to the Second Department in opposition to the *coram nobis* motion, petitioner's former appellate counsel explained that he did not raise this claim on appeal because "under People v. Velasco, 77 N.Y.2d 469 (1991), and countless Appellate Division cases, a defendant may lawfully be excluded from challenge conferences . . . so long as he is present when the jurors are actually selected and sworn in open court." A review of New York case law demonstrates that this contention is accurate: both the Court of Appeals, in Velasco, and the Second Department have repeatedly held that juror challenges may be exercised outside the presence of the defendant, provided that the challenges are "given effect in open court." People v. Brown, 269 A.D.2d 539, 539, 704 N.Y.S.2d 486 (2d Dep't 2000); accord People v. Mieles, 254 A.D.2d 436, 680 N.Y.S.2d (2d Dep't 1998). The trial transcript shows that the chosen jurors were announced in open court and the judge asked whether the jurors were "acceptable to both sides," to which the defense lawyer and the prosecution each answered "yes." Under these circumstances, the New York Court of Appeals has held that a defendant's presence during the actual challenges is "'useless,'" and his absence does not violate his federal "constitutional right to be present during court proceedings." Velasco, 77 N.Y.2d at 472-73 (quoting Snyder v. Massachusetts, 291 U.S. 97, 106-07, 54 S.Ct. 330 (1934)). There is no decision of the United States Supreme Court that would indicate any constitutional deficiency in this holding.

According to the Supreme Court, the process of "winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536, 106 S.Ct. 2661 (1986) (internal quotation marks omitted). An appellate lawyer's decision to forego an

11

argument that the state's highest court has expressly deemed meritless cannot form the basis of a Sixth Amendment claim. See Jones v. Barnes, 463 U.S. 745, 754, 103 S.Ct. 3308 (1983) (appellate counsel need not "raise every nonfrivolous issue that the defendant requests"); Aparicio v. Artuz, 269 F.3d 78, 100 (2d Cir. 2001) (appellate counsel is not ineffective for "failing to raise [a] meritless argument"). To the contrary, a petitioner may establish constitutionally inadequate appellate performance only by showing that counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). Because petitioner's counsel's decision to forego the jury challenge claim was a patently wise choice, the state court's rejection of petitioner's ineffectiveness claim was an objectively reasonable application of, and not contrary to, the Supreme Court's decision in Strickland.

This is especially true because petitioner failed to allege – in his *coram nobis* application or in the instant petition – that he suffered any prejudice as a result of his absence from the jury room while the juror challenges took place. The second prong of the Strickland analysis requires a petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. There is no indication in the record that petitioner's trial was affected in any way by the juror challenges, much less by petitioner's absence from these challenges. The state court's application of Strickland was therefore not only reasonable but manifestly correct.

### C. Petitioner's Resentencing

Petitioner claims that his initial sentencing was illegal under New York law, as the state court failed to orally announce petitioner's sentence in open court. He further claims that his resentencing was improper because it violated § 440.40 of New York's Criminal Procedure Law

– which provides that a district attorney may not move to correct an illegal sentence more than one year after imposition of the initial sentence – and because his original sentencing judge did not intend to apply the five-year PRS term. Petitioner also asserts, vaguely, that his sentencing and resentencing deprived him of due process of the law and subjected him to double jeopardy. The Court of Appeals rejected these claims on the merits in a detailed opinion. Petitioner may therefore secure habeas relief from this Court only upon a showing that the Court of Appeals' rejection of his due process and double jeopardy claims was contrary to, or an unreasonable application of, some clearly established Supreme Court precedent.

Petitioner does not assert that the Court of Appeals' decision was contrary to, or an unreasonable application of, any particular Supreme Court precedent. However, reading petitioner's *pro se* submission to present the strongest arguments that it suggests, this Court notes that the Supreme Court's decision in Hill v. United States *ex rel.* Wampler, 298 U.S. 460, 56 S.Ct. 760 (1936), which holds that the material terms of a sentence must be pronounced in open court, is applicable to petitioner's claim. In Earley v. Murray, 451 F.3d 71, 75 (2d Cir. 2006), the Second Circuit held that this 70-year old Supreme Court case provides a "clearly established" federal law mandating that a PRS term be imposed by a judge, rather than an administrative body such as the DOCS. Interpreting Wampler, the Circuit held that "[o]nly the judgment of a court, as expressed through the sentence imposed by a judge, has the power to constrain a person's liberty." Id. However, the Second Circuit also read Wampler to hold that the proper way to correct an illegal sentence is "through a judicial proceeding, in the defendant's presence," such as a resentencing "in accordance with the law." Id. at 76.

The first sentence of the New York Court of Appeals' decision states that defendants have a right "for a judge to pronounce the PRS sentence in their presence in open court, and . . .

13

the remedy when a judge neglects to do this is resentencing to correct the error." Lingle, 16 N.Y.3d at 629. The Court of Appeals therefore precisely applied the Wampler rule, as interpreted by the Second Circuit. Moreover, the Court of Appeals' decision went a step beyond the Wampler rule to examine the constitutionality of New York's resentencing method. The Court ultimately determined that New York's procedure for resentencing defendants does not run afoul of the Due Process or Double Jeopardy clauses of the federal Constitution. In so holding, the Court's analysis was not contrary to, or an unreasonable application of, any Supreme Court precedents regarding due process or double jeopardy.

### 1. Double Jeopardy

The Double Jeopardy clause of the Fifth Amendment to the Constitution prohibits the government from subjecting an individual to "multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072 (1969). In Bozza v. United States, the Supreme Court held that this clause is not violated when an illegal sentence is immediately corrected through resentencing of a defendant on the same day as the initial, illegal sentence. 330 U.S. 160, 166-67, 67 S.Ct. 645 (1947). This rule was reiterated and expanded in United States v. DiFrancesco, 449 U.S. 117, 136-37, 101 S.Ct. 426 (1980), where the Supreme Court considered whether a defendant may be resentenced to a greater punishment upon appeal, rather than immediately following the initial sentence. After explaining that "[t]he Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be," the Court ultimately held that a sentence may be increased until a defendant has a "legitimate expectation" that the sentence is final and not subject to increase. Id. at 137.

There is no firmly established Supreme Court precedent which addresses whether a sentence may be increased after the expiration of the government's time to appeal. DiFrancesco's "legitimate expectation" rule is therefore the most germane Supreme Court precedent governing petitioner's situation, and AEDPA allows me to ask only whether the Court of Appeals' decision was a reasonable interpretation of this rule. I find that the Court of Appeals' application of this rule was not only reasonable, but thoroughly apt.

In determining that petitioner's resentencing did not expose him to double jeopardy, the New York Court of Appeals referenced and adopted its reasoning from an earlier decision, People v. Williams, 14 N.Y.3d 198, 899 N.Y.S.2d 76 (2010), where the Court analyzed this particular double jeopardy issue through the lens of Bozza and DiFrancesco. See Lingle, 16 N.Y.3d at 630. The Williams Court accurately described the Supreme Court standards articulated in Bozza and DiFrancesco, noting that DiFrancesco directs a court to determine whether an individual in petitioner's position can be said to have a "legitimate expectation of finality" in his originally-imposed sentence. Noting the lack of precedent controlling petitioner's particular situation, the Court drew from decisions of various federal Courts of Appeals, including the Second Circuit, to formulate a rule that the resentencing of individuals in petitioner's circumstances is constitutional until the completion of the defendant's originally-imposed sentence, at which point the defendant's "reasonable expectation of finality" results in "the attachment of jeopardy precluding resentencing." Williams, 14 N.Y.3d at 216 (citing United States v. Rico, 902 F.2d 1065, 1069 (2d Cir. 1990) ("The expectation of finality comes from the prospect of release as defendant nears the end of his or her prison term.")).

In so holding, the Court relied heavily on the fact that petitioner's initial sentence was illegal. Since "criminal defendants are charged with knowledge of the relevant laws that apply to

15

them," the Court reasoned that defendants are "presumed to be aware that a determinate prison sentence without a term of PRS is illegal, and, thus, may be corrected by the sentencing court at some point in the future." Id. at 217. Recognizing that jeopardy must eventually attach, the Williams Court determined that a defendant's expectation of finality in his illegal sentence becomes reasonable once he is no longer in custody. Applying this holding, the Lingle Court ruled that petitioner, who was still in custody at the time of his resentencing, had no legitimate expectation of finality under DiFrancesco. The Court reached this determination through a faithful and sensible application of DiFrancesco, consistent with relevant Second Circuit precedent. AEDPA therefore renders the state court's rejection of petitioner's double jeopardy claim impervious to this federal habeas attack.

### 2. Due Process

Petitioner claims that his resentencing violated due process because it occurred after the expiration of the prosecutor's statutory time to appeal or move to correct the sentence. "Federal habeas corpus relief does not lie for errors of state law," unless the error rises to the level of a violation of the United States Constitution. Estelle v. McGuire, 502 U.S. 62, 67 & 72, 112 S.Ct. 475 (1991). Petitioner's arguments that his initial sentence was illegal under Jenna's Law and that his resentencing violated § 440.40 are therefore not cognizable on federal habeas corpus review unless these state-law violations amounted to a deprivation of petitioner's rights under the Due Process clause of the federal Constitution.

When the government is alleged to have abused the state's power, Supreme Court precedent holds that this abuse violates the Due Process clause only when "the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscious." County of Sacramento v. Lewis, 523 U.S. 833, 848 n. 8, 118 S.Ct.

16

1708 (1998). Because there is no Supreme Court precedent that more directly addresses petitioner's due process claim, petitioner may prevail on this argument only by demonstrating that the Court of Appeals' decision in Lingle was contrary to, or an unreasonable application of, the Supreme Court's opinion in Lewis.

The Lingle Court determined that petitioner's resentencing did not shock the conscience because the resentencing "merely imposed statutorily-required sentencing." 16 N.Y.3d at 632-33. The Court explained that the state did not resentence petitioner out of "malice or sadism, but out of a desire to see that legislatively determined mandatory sentences were actually served." Id. Addressing the government's delay in bringing the resentencing proceedings, the Court reasoned that this delay did not shock the conscience because it was unlikely to have caused petitioner any genuine surprise. Because PRS is statutorily mandated; petitioner was "represented by presumably competent counsel"; and DOCS typically informs defendants of the mandatory PRS term upon entry into prison, the Court found "every reason to believe" that petitioner "did, in fact, know that [he was] subject to PRS long before efforts to resentence [him] were taken." Id. at 633. The Court therefore held that the resentencing did not shock the conscience.

Given the Court of Appeals' factual finding – which I must presume to be correct – that petitioner likely knew about his PRS term from the get-go, it follows *ipso facto* that petitioner's belated resentencing did not submit him to any particular cruelty or injustice. I therefore find that the Court of Appeals' decision to reject petitioner's due process claim was a reasonable application of the Supreme Court's "shock the conscience" rule. This claim, therefore, does not to support federal habeas relief.

17

## CONCLUSION

The writ of habeas corpus is denied. Therefore, a certificate of appealability shall not issue. 28 U.S.C. § 2253. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917 (1962).

U.S.D.J.

Dated: Brooklyn, New York
October 11, 2011